**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **PATRICIA LOZOSKY,** | : |
| | : |
| **Plaintiff** | **CIVIL ACTION NO. 3:13-0512** |
| | : |
| **v.** | |
| | :    **(JUDGE MANNION)** |
| **KEYSTONE BUSINESS PRODUCTS, INC.** | : |
| | |
| **Defendants** | : |

## M E M O R A N D U M

Pending before the court is defendant's partial motion to dismiss. (Doc. No. 10). Plaintiff brings claims for violations of the Americans with Disabilities Act, the Age Discrimination in Employment Act, and sex discrimination and sexual harassment under 42 U.S.C. §2000e, Title VII of the Civil Rights Act. (Doc. No. 1). Defendants move for dismissal of the claim for sexual harassment under Title VII for failure to state a claim. For the following reasons, the defendant's partial motion to dismiss will be **GRANTED**.

## I.    BACKGROUND

Plaintiff Patricia Lozosky alleges that she was employed as a salesperson by defendant Keystone Business Products, Inc. ("Keystone"), making sales in Luzerne County and other areas of Northeast Pennsylvania and working at least some of the time from her home. Keystone's main place

of business is in Bethlehem, Pennsylvania. (Doc. No. 1, at ¶¶ 2,7). She worked for Keystone from October 1992 until December 29, 2011, when she was ordered by her supervisor to attend a meeting with the owner of the company, Louis Morda, at his home. (Id. at ¶¶ 7, 9). Plaintiff alleges that at the meeting, Morda accused plaintiff of suffering from alcoholism, and ordered her to attend an alcohol rehabilitation program or face having her employment status changed to that of a "commission only" salesperson without benefits, health insurance, and out-of-pocket expense reimbursement. (Id. at ¶¶ 11-12). Plaintiff alleges that her denial of having an alcohol problem and refusal to attend a rehab program resulted in her being immediately demoted to "commission only," and then subsequently fired on January 6, 2012. (Id. at ¶¶ 17, 19).

Plaintiff additionally alleges that she was fifty-one at the time, and that she was terminated by the company because they intended to replace her with a younger, less senior worker. (Id. at ¶¶ 36-37). She additionally alleges that she was terminated and replaced with a less qualified male employee. (Id. at ¶ 52). During her tenure at Keystone, she was often the only female salesperson employed, and was subjected to conversations among other employees, including Morda, laced with sexual profanity. (Id. at ¶¶ 64-65). Plaintiff also alleges that Morda often greeted her with unwanted hugs and kisses on the lips or cheeks, to which she felt forced to submit because Morda was her boss. (Id. at ¶¶ 61, 63). Plaintiff finally alleges that on December 29,

2011, when she attended her private meeting with Morda, he told her that they were alone, greeted her with a hug and kiss, and sat directly next to her. (Id. at ¶¶ 68, 71).

Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission, and received a notice of a right to sue dated November 30, 2012. (Id. at ¶ ¶ 6, 34, 46, 67). Defendant brings this motion to dismiss Count IV of the complaint, which sounds in sexual harassment under Title VII of the Civil Rights Act of 1964.

## II.    STANDARD OF REVIEW

The defendant's motion to dismiss is brought pursuant to the provisions of Fed.R.Civ.P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts" language found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s]

3

to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. Id. Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting Twombly, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See* Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See* Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

Generally, the court should grant leave to amend a complaint before

dismissing it as merely deficient. *See*, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000). "Dismissal without leave to amend is justified only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d 229, 236 (3d Cir. 2004).

## III.    DISCUSSION

To succeed on a claim that sexual harassment created a hostile work environment under Title VII, a plaintiff must show that: "1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability." Mandel v. M&Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013). The first four elements establish a hostile work environment, and the fifth determines employer liability. Id. (*citing* Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 104 (3d Cir. 2009)). "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 80 (1998)(*citing* Harris v. Forklift Sys., Inc., 510 U.S. 17, 25

5

(1993)(Ginsburg, J., concurring)).

To determine the hostility of a work environment, a court considers all of the circumstances, including the frequency and severity of discriminatory conduct, whether it is "physically threatening or humiliating, or a mere offensive utterance," and whether it interferes unreasonably with an employee's performance. Mandel, 706 F.3d at 168 (*citing* Harris, 510 U.S. at 23). "Simple teasing, offhand comments, and isolated comments (unless extremely serious) will not amount to discriminatory changes in the conditions of employment." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). Title VII is not intended to ensure "general civility," but creates "demanding" standards for a finding of hostility. Faragher, 524 U.S. at 788. It does not support complaints attacking the occasional use of abusive language, teasing, or jokes. Id. No single factor is required, however, to make out a claim for hostile work environment. Harris, 510 U.S. at 23. "Common sense, and an appropriate sensitivity to social context" will help courts determine whether conduct exists which "a reasonable person in the plaintiff's position would find severely hostile or abusive." Oncale, 523 U.S. at 82.

Here, plaintiff has alleged that her boss greeted her with hugs and kisses, that her boss and coworkers used sexual profanity around her, and that she was forced to attend a private meeting at her boss's home, where he greeted her with a hug and kiss and sat directly next to her, making her uncomfortable. Taken individually and together, these allegations do not rise

to the level of being so severe and pervasive that they adversely altered the terms and conditions of plaintiff's employment.

Sitting in uncomfortable proximity to plaintiff on one occasion is not actionable under Title VII. *See* Pittman v. Bob, 520 Fed.Appx. 101, 102 (3d Cir. 2013)(coworker standing in "uncomfortable" proximity to plaintiff on isolated occasion, among other allegations, insufficient to make out claim for hostile environment). Moreover, the allegation that plaintiff was "often subjected to conversations" in which "sexual profanity was utilized" is vague, and insufficient to sustain a claim of sexual harassment under Title VII. (Doc. No. 1, at ¶ 65). While conducting profane or sexual conversation at work may be boorish and uncouth, it does not rise to the level of creating a hostile workplace environment. *Compare* Benette v. Cinemark U.S.A., Inc., 295 F.Supp.2d 243, 248 (W.D.N.Y. 2003) (supervisor's explicit discussions of bodies of plaintiff and other female coworkers, repeated use of word "fuck," and questions about plaintiff's sexual relationships did not rise to level of creating hostile environment); *also compare* Donaldson v. Norfolk Cty. South. Ry., Co., 2011 WL 3568843, at * 10 (Aug. 15, 2011 M.D.Pa.)(repeated instances of graffiti describing sexually explicit conduct of plaintiffs being posted in workplace, without evidence that it was created *because of* plaintiffs' sex, insufficient to maintain Title VII hostile work environment claim).

Here, plaintiff makes no specific claims about what particular offensive content the conversations contained. Plaintiff also does not allege, and the

complaint does not indicate, that the "sexual profanity" was directed at her, either personally or on account of her sex. Nor does she allege that the conversations were physically threatening or humiliating to her. Moreover, plaintiff does not allege that she complained about this offensive behavior during her tenure working for defendant. Instead, what plaintiff describes is occasionally being present for, or overhearing, conversation that was offensive, but that did not seriously interfere with any terms or conditions of her employment. The allegations regarding the offensive talk are simply insufficient to support a workplace hostility claim.

Finally, plaintiff's allegation that she was "often greeted" by Morda "with a kiss, either on the lips or on the cheek, and a hug," is insufficient to show that her workplace environment was hostile. Courts have found that kissing and touching, even with an obvious and aggressive sexual intent, is insufficient to create a hostile environment. *See* McGraw v. Wyeth-Ayerst Labs., Inc., 1997 WL 799437 (Dec. 30, 1997 E.D.Pa.)(supervisor kissing plaintiff without consent, forcing tongue into her mouth, touching her face, and repeatedly asking her out on dates insufficient to create hostile work environment); Saidu-Kamara v. Parkway Corp., 155 F.Supp.2d 436, 440 (E.D.Pa. 2001)(supervisor touching plaintiff's breasts and buttocks without consent and removing a bottle of wine from his pants and offering plaintiff a drink not pervasive and severe enough to create hostile work environment).

The hugs and kisses alleged by plaintiff do not rise to the level of

severity or pervasiveness required to sustain a sexual harassment claim under Title VII. Viewing the allegations with a view towards social context, a hug and kiss in greeting are not outside the scope of socially acceptable and non-abusive actions people take upon greeting a longtime friend or acquaintance. While plaintiff may have felt uncomfortable at being greeted this way by her boss, the complaint does not adequately allege that the greetings changed the terms or conditions of her employment or create an environment which was severely and pervasively hostile.

Plaintiff, with respect to the December 29, 2011 meeting at Morda's house, points to Scott v. City of New York D.O.C., 641 F.Supp.2d 211, 226 (S.D.N.Y. 2009) for the proposition that one incident of kissing can create a hostile work environment. (Doc. No. 19). That is so, but the facts in that case were not like the ones here. There, the president of the plaintiff's union forced his tongue into her mouth twice and told her to undress a mere hour before a union attorney was to represent her in a disciplinary proceeding. Id. The acts taken by the aggressor in that case were overtly sexual, and the plaintiff was obviously relying on union representation at the time of the harassment. Thus, that single incident was reasonably characterized as an "extraordinarily severe" single event which "materially altered the conditions of Scott's union membership." Id.

Although plaintiff may well have felt uncomfortable at being hugged and kissed while alone at Morda's home, the allegations do not show that the

9

December 29, 2011 meeting was overtly sexual as in the Scott case. There is no allegation that she was kissed on the mouth on that date, and even assuming that she was, there is no allegation that Morda "forced his tongue into her mouth" as in Scott. While a kiss in greeting may be inappropriate, it is far less severe than what occurred in Scott. Additionally, the kiss and hug in the instant matter were made in greeting before plaintiff even knew the topic of the meeting with Morda, which makes the facts here even more unlike those in Scott, where the plaintiff knew that her employment was at risk and that she was reliant on the person accosting her and telling her to undress in front of him.

Rather, the clear implication here was that the meeting with Morda was scheduled away from work as an accommodation to the plaintiff's privacy. Even a fair reading of the plaintiff's allegations fail to indicate the greeting was designed as some prelude to unwelcome sexual activity, rather it appears to have been an awkward and perhaps inappropriate attempt to be friendly in light of the discussion that was contemplate due to the defendant's belief that the plaintiff had a severe alcohol problem that required intervention. Scott therefore does not support plaintiff's Title VII sexual harassment claim.

Even taking all of plaintiff's allegations as true and considering them cumulatively, they do not raise her sexual harassment claim to the level of plausibility. The court does not dispute that the alleged conversations and hugs and kisses could well make a person in plaintiff's position feel

10

uncomfortable. However, the allegations made by plaintiff are not specific, and insufficient to show conduct severe and pervasive enough to sustain a claim for sexual harassment under Title VII. There is no allegation that any of the complained-of actions occurred *because* plaintiff is a female, and the complaint does not allege sufficiently that the complained-of behavior led to material changes in the terms of her employment. Accordingly, defendant's partial motion to dismiss will be **GRANTED**. Count IV will be **DISMISSED** without prejudice to the plaintiff attempting to file an amended complaint with respect to this count, assuming the plaintiff has good faith basis to due so and sufficient allegations to support such a claim. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: October 23, 2013**

O:\Mannion\shared\MEMORANDA - DJ\2013 MEMORANDA\13-0512-01.wpd