**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

**PATRICIA LOZOSKY,**                    :

                               :

   **Plaintiff**                    :          **CIVIL ACTION NO. 3:13-0512**

                               :

   **v.**                    :          **(JUDGE MANNION)**

**KEYSTONE BUSINESS**                    :
**PRODUCTS, INC.,**                    :

   **Defendant**                    :

**M E M O R A N D U M**

Pending before the court is plaintiff's motion for leave to file a first amended complaint. (Doc. 48). In her initial complaint, plaintiff brought claims for violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et seq*., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq*., and sex discrimination and sexual harassment under 42 U.S.C. §2000e, Title VII of the Civil Rights Act, Counts I-IV, respectively. (Doc. 1). Defendants moved for dismissal of the Title VII claim for sexual harassment (Count IV) for failure to state a claim and on October 23, 2013, this claim was dismissed without prejudice to the plaintiff filing an amended complaint. Plaintiff did not timely filed an amended complaint regarding her Title VII sexual harassment claim. Several extensions of discovery have been granted and the close of discovery is now October 1, 2015. Based on the evidence adduced during discovery, plaintiff moves to amend her complaint

seeking to add two new defendants, to plead causes of action of piercing the corporate veil and fraudulent conveyance, and to more specifically plead her Title VII sex discrimination claim. The plaintiff's motion to amend her complaint will be **GRANTED, IN PART,** and **DENIED, IN PART**.

## I.    BACKGROUND

In her original February 22, 2013 complaint, plaintiff Patricia Lozosky alleges that she was employed as a salesperson by defendant Keystone Business Products, Inc. ("Keystone"), making sales in Luzerne County and other areas of Northeast Pennsylvania and working at least some of the time from her home. Keystone's main place of business is in Bethlehem, Pennsylvania. (Doc. 1, at ¶¶ 2,7). She worked for Keystone from October 1992 until December 29, 2011, when she was ordered by her supervisor to attend a meeting with the owner of the company, Louis Morda, at his home. (Id. at ¶¶ 7, 9). Plaintiff alleges that at the meeting, Morda accused her of suffering from alcoholism, and ordered her to attend an alcohol rehabilitation program or face having her employment status changed to that of a "commission only" salesperson without benefits, health insurance, and out-of-pocket expense reimbursement. (Id. at ¶¶ 11-12). Plaintiff alleges that her denial of having an alcohol problem and refusal to attend a rehab program resulted in her being immediately demoted to "commission only," and then subsequently fired on January 6, 2012. (Id. at ¶¶ 17, 19).

2

Plaintiff additionally alleges that she was fifty-one at the time, and that she was terminated by the company because it intended to replace her with a younger, less senior worker. (Id. at ¶¶ 36-37).  She additionally alleges that she was terminated and replaced with a less qualified male employee. (Id. at ¶ 52). During her tenure at Keystone, she avers that she was often the only female salesperson employed, and was subjected to conversations among other employees, including Morda, laced with sexual profanity. (Id. at ¶¶ 64-65). Plaintiff also alleges that Morda often greeted her with unwanted hugs and kisses on the lips or cheeks, to which she felt forced to submit because Morda was her boss. (Id. at ¶¶ 61, 63). Plaintiff finally alleges that on December 29, 2011, when she attended her private meeting with Morda, he told her that they were alone, greeted her with a hug and kiss, and sat directly next to her. (Id. at ¶¶ 68, 71).

Plaintiff filed a charge of employment discrimination with the Equal Employment Opportunity Commission, and received a notice of a right to sue dated November 30, 2012. (Id. at ¶ ¶ 6, 34, 46, 67).

Plaintiff now moves to amend her complaint to add Louis Morda and his wife Mary Louise Morda as defendants, to add new state law claims of piercing the corporate veil and fraudulent conveyance under the Pennsylvania Uniform Fraudulent Conveyance Act  ("PUFTA"), 12 Pa. C.S.A. §5101, *et seq*., and to plead her federal sex discrimination claim with more specificity. Plaintiff filed her brief in support of her motion with exhibits, (Doc. 52), and

defendant has filed its brief in opposition with exhibits, (Doc. 54). Plaintiff did

not file a reply brief.

The court has jurisdiction over plaintiff's federal claims under 28 U.S.C.

§1331, and it can exercise supplemental jurisdiction over her proposed state

law claims under 28 U.S.C. §1367.


## II.   MOTION TO AMEND STANDARD

The plaintiff's motion to amend is brought pursuant to the provisions of

Fed.R.Civ.P. 15. The filing of an amended complaint is governed by Fed. R.

Civ. P. 15(a):

> (1) *Amending as a Matter of Course*. A party may amend its
> pleading once as a matter of course within:
>
> (A) 21 days after serving it, or
>
> (B) if the pleading is one to which a responsive
> pleading is required, 21 days after service of a
> responsive pleading or 21 days after service of a
> motion under Rule 12(b), (e), or (f), whichever is
> earlier.
>
> (2) *Other Amendments*. In all other cases, a party may amend its
> pleading only with the opposing party's written consent or the
> court's leave. The court should freely give leave when justice so
> requires.

Fed. R. Civ. P. 15(a). This court's Local Rules require that a proposed

amended pleading must accompany a motion. *See* Local Rule 15.1(a). The

"amended pleading must be retyped or reprinted so that it will be complete in

itself". *Id.* Plaintiff attached a proposed amended complaint to her instant

motion. (Doc. 48-2).

The United States Court of Appeals for the Third Circuit has adopted a liberal approach to the amendment of pleadings in order to ensure that "a particular claim will be decided on the merits rather than on technicalities." Dole v. Arco Chem. Co., 921 F.2d 484, 486–87 (3d Cir.1990). Amendment, however, is not automatic. *See* Dover Steel Co., Inc. v. Hartford Accident and Indent., 151 F.R.D. 570, 574 (E.D.Pa.1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962); *see also* Oran v. Stafford, 226 F.3d 275, 291 (3d Cir.2000). Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. *See* In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir.1997) ("In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)."). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." Harrison Beverage Co. v. Dribeck Importers, Inc., 133 F.R.D. 463, 468 (D.N.J.1990).

## III.   DISCUSSION

### A. Piercing the Corporate Veil

Plaintiff seeks to add Louis Morda, President, owner and sole shareholder of Keystone, and Mary Louise Morda, Vice President/Secretary of Keystone, as defendants in their individual capacity. Keystone is a closely-held, Subchapter S corporation, family business. The new proposed Count IV of plaintiff's amended complaint is a claim styled "Piercing the Corporate Veil."[1] Plaintiff alleges that Mr. Morda is the alter ego of Keystone. Plaintiff also seeks to add Mrs. Morda in her proposed Count IV despite the fact that Mrs. Morda is not an owner of Keystone. Plaintiff states that the new claim against both Mr. Morda and Mrs. Morda arose out of the conduct, transaction or occurrence set forth in the original pleading, i.e., involving the processing and handling of her employment with Keystone, including her demotion and alleged termination. Plaintiff also states that Mr. Morda and Mrs. Morda, as officers of Keystone have been involved in this litigation since the beginning and have had notice of this action, and that they were the primary actors in her demotion and termination. Plaintiff further alleges that the Mordas acted outside their capacities as officers of the corporation and, should be named as defendants individually. Specifically, plaintiff alleges that Mr. Morda had a private meeting with her at his residence and that Mrs. Morda wrote a letter

---

[1]Counts VI and VII of plaintiff's proposed amended complaint should be Counts IV and V. As such, the correct numbers are used herein.

to the "Valued Customers" of Keystone advising them that plaintiff was replaced by two male employees allegedly under 40. Additionally, plaintiff alleges the Mordas disseminated her private, confidential information to their daughter, Maria Bear, without her knowledge or consent, in violation of company policies set forth in the Employee Handbook and her right to privacy.

The "'classical' piercing of the corporate veil is an equitable remedy whereby a court disregards 'the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation.'" In re Blatstein, 192 F.3d 88, 100 (3d Cir. 1999) (citation omitted).

The Court in Van Doren v. Coe Press Equip. Corp., 592 F. Supp. 2d 776, 796 (E.D.Pa. 2008), stated:

> Piercing the corporate veil "was a doctrine originally designed by the courts to protect innocent parties by treating the corporation and its shareholders,[], as identical for purposes of suit." Kiehl v. Action Mfg. Co., 517 Pa. 183, 535 A.2d 571, 574 (1987). Under Pennsylvania law, "[t]here is a strong presumption against piercing the corporate veil . . . [and] [a]ny court must start from the general rule that the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." Limax Indus. v. Aultman, 543 Pa. 38, 669 A.2d 893, 895 (1995) (citations omitted).The factors that Pennsylvania courts consider in deciding whether to pierce the corporate veil include "undercapitalization, failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs and use of the corporate form to perpetrate a fraud." Id. at 895.
>
> Thus, as Keystone states, "piercing of the corporate veil [a/k/a the alter

ego theory] postulates that the owner of a corporation and the corporation itself are, for all intents and purposes, one in the same and that, therefore, the owner personally shares in the liabilities of the corporation." (Doc. 54, at 4). However, the alter ego theory does not apply to a non-owner officer of a corporation. *See* Eastern Minerals & Chemicals Co. v. Mahan, 225 F.3d 330, 333 n. 7 (3d Cir. 2000) ("The alter ego theory comes into play in piercing the corporate veil when one seeks to hold liable an individual owner who controls the corporation.") (citations omitted); Advanced Tel. Sys., Inc. v. Com–Net Prof'l Mobile Radio, LLC, 846 A.2d 1264, 1278 (Pa.Super.Ct. 2004) (The alter ego theory of piercing the corporate veil "is applicable when 'the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable.'") (quoting Good v. Holstein, 787 A.2d 426, 430 (Pa.Super.Ct. 2001). As such, plaintiff's motion to add Mrs. Morda as a defendant in Count IV will be denied since the proposed amendment as against her would be futile because piercing of the corporate veil theory does not apply to a non-owner of Keystone.

Mr. Morda is the President, sole shareholder and owner of Keystone, and Keystone has no board of directors and held no board meetings. The proposed amendment to add a piercing the corporate veil count as against Mr. Morda under an alter ego theory of liability will be granted.

Plaintiff bears a difficult burden to persuade the court to pierce the corporate veil of Keystone. Pearson v. Component Tech. Corp., 247 F.3d 471,

8

485 (3d Cir. 2001). "Pennsylvania courts presume the legitimacy of the corporate form and will not pierce the veil unless exceptional circumstances warrant such an exceptional remedy." *Accurso v. Infra–Red Servs., Inc.*, 23 F.Supp.3d 494, 509 (E.D.Pa. 2014) (citation omitted). "The Third Circuit alter ego test [] requires that the court look to the following factors: gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder." Pearson, 247 F.3d at 484–485. "Under the 'alter ego' veil piercing subtheory—which is 'applicable when' 'the individual or corporate owner controls the corporation to be pierced and the controlling owner is to be held liable,' [] the party that seeks to pierce the corporate veil must show that the 'lack of [corporate] formalities led to some misuse of the corporate form[.]'" Accurso, 23 F.Supp.3d 509-510 (internal and external citations omitted). To pierce the corporate veil of Keystone, plaintiff must show that Keystone's "affairs and personnel were manipulated to such an extent that it became nothing more than a sham used to disguise the alter ego's [Mr. Morda's] use of its assets for his own benefit in fraud of its creditors." Id. at 510 (quoting Kaplan v. First Options of Chi., Inc., 19 F.3d 1503, 1521 (3d Cir. 1994). "In short, the evidence must show that the corporation's owners abused the legal

separation of a corporation from its owners and used the corporation for illegitimate purposes." Id. (quoting Kaplan, 19 F.3d at 1521).

"Although veil-piercing is not a separate cause of action, but rather a basis for a cause of action against particular individuals, [] , a court 'must examine ... whether the facts pleaded ... state a cause of action on a theory of piercing the corporate veil.'" Id. (citation omitted); *see also* Blatstein, 192 F.3d at 100 (Alter-ego liability is an "equitable remedy whereby a court disregards the existence of the corporation to make the corporation's individual principals and their personal assets liable for the debts of the corporation."). Thus, in order for plaintiff's veil-piercing claim against Mr. Morda to proceed, she must have "pled the quantum of facts necessary to give rise to the reasonable inference that the alter ego test could be satisfied." Id. (citation omitted).

Mr. Morda bought the assets of 3M for about $500,000.00, which was financed by the owners of 3M, and incorporated Keystone in December of 1982. Plaintiff contends that Mr. Morda was in complete dominion and control over Keystone, kept the corporate kit at his residence, and failed to adhere to corporate formalities. Plaintiff also states that there was a substantial intermingling of corporate and personal affairs inasmuch as Mr. Morda made many unilateral decisions, including, interviewing all of the prospective employees, directing how to handle all personnel matters, hiring and firing all employees, setting employees' territories, and setting all salaries. Plaintiff

further alleges that both Mordas commingled their personal accounts with Keystone's and paid some of their personal expenses from the accounts of Keystone. Thus, plaintiff maintains that Keystone was merely a facade for the operations of Mr. Morda.

Keystone argues that in small, closely-held or family corporation such as Keystone, the lack of corporate formalities "are considered of little consequence." Zubik v. Zubik, 384 F.2d 267, 271 n. 4 (3d Cir. 1967), aff'd, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Keystone maintains that the facts of this case "are strikingly similar to those in *Zubik.* Louis Morda is 72 years old and he owned and operated Keystone for over thirty-two (32) years. Mr. Morda has always operated the business under a closely-help corporate structure, which at no time was conceived or maintained so as to perpetrate fraud on either Plaintiff or the community at large." (Doc. 54, at 8).

Keystone,(Doc. 54, at 8), concludes:

> As acknowledged by Plaintiff, Louis Morda formed the corporate entity known as "Keystone Business Products, Inc." in 1982, long before Plaintiff was even employed at Keystone. Keystone was not formed "as a sham to disguise the alter ego's use of its assets for his own benefit in fraud of its creditors." Blatstein, 192 F.3d [88] at 100 [(3d Cir. 1999)]. Moreover, Plaintiff is not yet a creditor of Keystone, []. Hence, [] , the proposed amendment would prove premature and futile and, therefore, leave should not be granted.

Plaintiff has alleged enough facts in her proposed amended complaint to state a cognizable theory of veil piercing necessary to permit this claim to proceed against Mr. Morda. Plaintiff has met the stringent burden to pierce

the corporate veil since she has alleged that Mr. Morda abused the legal separation between himself and Keystone and used Keystone and its assets for improper purposes. *See* Clientron Corp. v. Devon IT, Inc., 2015 WL 70921 E.D.Pa. Jan. 05, 2015). Moreover, there are exceptional circumstances to warrant piercing Keystone's corporate veil and holding Mr. Morda personally liable for Keystone's obligations since he sold all the assets of Keystone to a third party, Stratix, on December 12, 2014, and Keystone was denied insurance coverage regarding plaintiff's discrimination claims.

As such, plaintiff's motion to add Mr. Morda as a defendant in this case will be granted and plaintiff's new Count IV in her proposed amended complaint will be permitted as against Mr. Morda. *See* Clientron Corp. v. Devon IT, Inc., *supra.*

### B. FRAUDULENT CONVEYANCE

Plaintiff seeks to amend her complaint and add a new Count V in her proposed amended complaint to plead the cause of action of fraudulent conveyance under PUFTA. Plaintiff alleges that Mr. Morda and Mrs. Morda failed to disclose to her the sale of all Keystone's assets after she filed this action and then absconded to Florida. Specifically, in Count V of her proposed amended complaint, plaintiff alleges:

135. Upon information and belief, sometime after Defendants' discriminatory acts against Plaintiff, Defendants, Louis Morda and

12

Mary Louise Morda, submitted Plaintiff's employment discrimination claims to their insurance carrier, Allied Insurance Company, who denied coverage for Defendants' failure to timely submit the claim to their carrier.

136. Upon information and belief, Defendants, Louis Morda, in his President and/or Secretary, on behalf of Defendant, Keystone, began negotiations with Stratix sometime shortly after the within lawsuit was filed and Defendant's, Keystone, insurance claim for coverage in this matter was denied.

137. On or about December 12, 2014, Defendants, Louis Morda, in his capacity as President, and sole shareholder, and Mary Louise Morda, in her capacity as Vice-President and/or Secretary, on behalf of Defendant, Keystone, sold all the assets of Defendant, Keystone, to a third party, Stratix.

138. Defendants, Louis Morda and Mary Louise Morda, concealed the transfer and sale of the assets of Defendant, Keystone.

139. The aforesaid concealment was for the sole purpose of hindering Plaintiff in this action.

140. Plaintiff discovered the sale of the assets of Defendant, Keystone, through her current employer, Jay's Business Solutions, who was her former District Sales Manager while employed at Defendant, Keystone.

141. The transfer was for all of the assets of Defendant, Keystone.

142. The sole purpose of the transfer of the assets of Defendant, Keystone, by Defendants, Louis Morda and Mary Louise Morda, was to prevent Plaintiff from collecting on her claim in the event of a successful judgment, and, therefore, making Defendants, Louis Morda and Mary Louise Morda, "judgment proof".

(Doc. 48-2, at 35-37).

In her brief, plaintiff states that "[t]he timing of the filing of Plaintiff's Complaint and the sale [of Keystone], the negotiations of which took place earlier, along with the other factors, such as, failing to disclose the transfer, absconding to Florida, and selling all of the assets of the corporation,

supports the conclusion that Defendant, Keystone, acted with fraudulent intent under §5104(a)(1), ... ." (Doc. 52, at 21).

Plaintiff seeks to assert a claim against Mr. Morda and Mrs. Morda under PUFTA based on actual fraud which provides that a transfer or obligation incurred by a debtor is fraudulent as to present and future creditors "if the debtor made the transfer or incurred the obligation: ... with actual intent to hinder, delay or defraud any creditor of the debtor." 12 Pa.C.S.A. §5104(a)(1). "The existence of fraudulent intent may be inferred from all facts and circumstances surrounding the conveyance." Tiab Commc'ns Corp. v. Keymarket of Nepa, Inc., 263 F.Supp.2d 925, 934 (M.D.Pa. 2003). Since plaintiff, in her proposed Count V, (Doc. 48-2, ¶ 133), has listed the factors in §5104(b) which are considered to determine if the debtor actually intended to defraud a creditor, they are not repeated.

Plaintiff alleges sufficient facts, at this stage of the litigation, to support her claim that Mr. Morda sold all of the assets of Keystone to Stratix for about $1.3 million with the intent of hindering her in this case and to prevent her from collecting any judgment she may obtain. As such, the proposed amended complaint states an actual fraud claim upon which relief can be granted under PUFTA only as against Mr. Morda the sole owner of Keystone. *See* Golf Cart Services, Inc. v. Kabro Associates, LLC, 2013 WL 3524673, *4-*6 (M.D.Pa. July 11, 2013).

Keystone maintains that plaintiff may never be a creditor of Keystone if

14

she does not prevail on the merits of her discrimination claims and that her proposed new claims of piercing the corporate veil and fraudulent conveyance are premature until she actually obtains a judgment against Keystone. Keystone states that allowing plaintiff's proposed amendments with respect to her claims of piercing the corporate veil and fraudulent conveyance will confuse the issues for the jury, and will create undue prejudice and hardship for it. Keystone contends that plaintiff will not be prejudiced if she is made to wait on these two state law claims until she obtains a judgment on her federal claims since there is a four-year statute of limitations from the date of judgment on a claim of piercing the corporate veil and a two-year statute of limitations from the date of judgment on a claim of fraudulent conveyance.

While Keystone is correct as to the statute of limitations, *see* Madonna v. Francisco, 2014 WL 981568, *3-*4 (E.D.Pa. March 13, 2014), plaintiff will be prejudiced since she will have to re-initiate discovery and expend additional money and time to try and establish her claims of piercing the corporate veil and fraudulent conveyance if she succeeds on her employment discrimination claims. The court in the *Clientron* case permitted its plaintiff to file an amended pleading to add an owner of defendant corporation as a party-defendant under an alter-ego theory of liability despite the fact that plaintiff did not yet have a judgment against the corporation. Also, Keystone is not prejudiced by the addition of the two new claims since discovery was extended in this case. Additionally, if plaintiff does not succeed on her

15

underlying federal claims, her state law claims of piercing the corporate veil and fraudulent conveyance will be of no moment further limiting any prejudice to Keystone.

Thus, plaintiff's new Count IV and Count V in her proposed amended complaint will be permitted as against Mr. Morda.

### C. DISCRIMINATION CLAIMS

In Counts I-III of her proposed amended complaint, plaintiff re-asserts her discrimination claims under Title I of the ADA, the ADEA and Title VII, respectively, with some revisions.

Insofar as plaintiff seeks to add Mr. Morda and Mrs. Morda as defendants with respect to her employment discrimination claims seeking damages under Title I of the ADA, the ADEA and Title VII such attempt is futile since individuals are not liable under these statutes. *See* Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061, 1077 (3d Cir. 1996) (Title VII does not impose liability on individuals); Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 184 (3d Cir. 1997) (Congress did not intend to hold individuals liable under Title VII); Slater v. Susquehanna County, 613 F.Supp.2d 653, 662 (M.D.Pa. 2009); Koslow v. Commw. of Pa., 302 F.3d 161, 178 (3d Cir. 2002) ("there appears to be no individual liability for damages under Title I of the ADA"); Hill v. Borough of Kutztown, 455 F.3d 225, 246 n. 29 (3d Cir. 2003) ("the ADEA does not provide for individual liability."); Newman v. GHS

16

Osteopathic, Inc., 60 F.3d 153, 157 (3d Cir. 1995) (stating that "the ADA, ADEA, and Title VII all serve the same purpose—to prohibit discrimination in employment against members of certain classes[, and] ... the methods and manner of proof under one statute should inform the standards under the others as well."); E.E.O.C. v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1280 (7th Cir. 1995) ("Courts routinely apply arguments regarding individual liability to all three statutes [Title VII, ADA, ADEA] interchangeably."). Also, even though Mr. Morda was the sole shareholder and owner of Keystone, he cannot be held liable in his individual capacity under Title VII and the ADA. *See* EEOC v. AIC Security Investigations, Ltd., 55 F.3d 1276, 1279–82 (7th Cir. 1995) (court held that individual owner and sole shareholder of corporation not liable as an individual under the ADA); Clarke v. Whitney, 907 F.Supp. 893 (E.D.Pa. 1995) (court held that a principal shareholder and officer not individually liable under the ADA).

Therefore, plaintiff's proposed amended discrimination claims under the ADA, the ADEA and Title VII cannot proceed as against Mr. Morda and Mrs. Morda in their individual capacity.

The court notes that even though Mr. Morda cannot be held liable in his individual capacity under the ADA, the ADEA and Title VII, if plaintiff prevails on her discrimination claims, Mr. Morda will necessarily "absorb the pinch" from Keystone's liability since plaintiff will be allowed to proceed on her "piercing the corporate veil" claim and she will be permitted to try and

17

demonstrate that Mr. Morda is actually the "alter ego" of Keystone. *See e.g.,* AIC Security, 55 F.3d at 1282 n. 11. Thus, if Mr. Morda did discriminate against plaintiff as she alleges, he will not escape unscathed.

Keystone only opposes plaintiff's proposed amendments to her sex discrimination claim under Title VII, i.e., Count III. Thus, plaintiff's amended employment discrimination claims seeking damages under Title I of the ADA and the ADEA, Counts I and II, will be allowed as against Keystone.

With respect to the Title VII claim, Keystone argues that plaintiff's original claims of discrimination "emanate from two allegedly adverse employment decisions that occurred on December 29, 2011 and January 6, 2012, [and] [o]n these respective dates, plaintiff alleges her compensation scheme was first adversely altered and that she was then wrongfully terminated." (Doc. 54, at 12). Keystone states that plaintiff seeks to add new theories and claims of sexual discrimination "focusing on disparate workplace treatment dating as far back as 2009." Further, Keystone contends that "plaintiff's expanded theories of sexual discrimination,[], encompass approximately forty-two (42) paragraphs of new allegations, many of which have nothing whatsoever to do with the adverse decisions alleged in the initial complaint." (Id.).

At the outset, Keystone argues that it opposes plaintiff's amended Title VII claim concerning alleged disparate workplace treatment dating back to 2009, 2010 and 2011, based on extreme delay since plaintiff failed to explain

why she did not include these allegations in her original complaint, filed two and one half years ago, which "focused exclusively on adverse employment decisions allegedly made in December of 2011 and January of 2012." (Doc. 54, at 13). "The question of undue delay, as well as the question of bad faith, requires that [the court] focus on the plaintiff['s] motives for not amending [her] complaint to assert this claim earlier." Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984). Plaintiff states that she waited for the completion of the depositions of Keystone's representatives which was May 20, 2015, to file her instant motion "to determine the discriminatory actions of proposed additional defendants, Louis Morda and Mary Louise Morda, to be certain of the[] need to name them as individual defendants." (Doc. 52, at 8). Plaintiff also states that Keystone's prior counsel caused a significant delay in completing the depositions and that her motion was timely filed about one month after Mr. Morda's deposition.

In her proposed amended Title VII sex discrimination claim, plaintiff alleges, in part, that her monthly expense checks of $350.00 were stopped in 2009 and that she did not receive these checks from 2009 through 2011, despite Mr. Morda's testimony that she was to receive expense checks during her employment with Keystone. Plaintiff alleges that Mr. Morda and Mrs. Morda  arbitrarily and willfully withheld her monthly expense checks, and that her similarly situated male counterparts at Keystone were given expense checks for all three years. Plaintiff was aware of her alleged disparate

19

workplace treatment claims regarding her expense checks dating back to 2009 when she filed her original complaint and she has not adequately explained why she did not include these allegations in her original pleading. Plaintiff did not require the depositions of Keystone's representatives to learn of her claims concerning her expense checks and she had previous opportunities to amend her complaint to add these claims. Thus, the two and one half year delay regarding these claims is prejudicial to Keystone and would place an unfair burden on it to now be subjected to discovery on claims known to plaintiff when she commenced this action. As such, ¶'s 73-80, (Doc. 48-2), of plaintiff's proposed amended Title VII sex discrimination claim shall not be allowed. However, plaintiff's remaining allegations in her proposed amended Title VII sex discrimination claim, including her alleged demotion on December 29, 2011, and her alleged reduced salary and commissions, shall be permitted as against Keystone since they are part of the same occurrences set forth in her original complaint and now provide greater specificity after discovery.

## IV. CONCLUSION

Accordingly, plaintiff's  motion for leave to amend her complaint, (Doc. 48), will be **GRANTED, IN PART,** and **DENIED, IN PART**. Plaintiff's motion insofar as it seeks to add Louis Morda as a defendant in this case will be granted, in part, and plaintiff's new Count IV and Count V in her proposed

20

amended complaint, piercing the corporate veil and fraudulent conveyance, will be permitted as against Louis Morda. Plaintiff's motion to the extent it seeks to add Mary Louise Morda as a defendant in this case will be denied. Plaintiff's proposed amended discrimination claims under the ADA, the ADEA and Title VII, Counts I-III, will not be allowed to proceed as against Mr. Morda and Mrs. Morda in their individual capacity. Plaintiff's amended employment discrimination claims seeking damages under Title I of the ADA and the ADEA, Counts I and II, will be allowed as against defendant Keystone. Paragraphs 73-80, (Doc. 48-2), of plaintiff's proposed amended Title VII sex discrimination claim, Count III, regarding her expense checks from 2009-2011 will not be allowed. Plaintiff's remaining allegations in her proposed amended Title VII sex discrimination claim shall be permitted as against defendant Keystone. An appropriate order shall issue.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: August 10, 2015**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-0512-02.wpd